UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SOLOMON BOOMER,

                        Plaintiff,

      v.

DR. ROBERT BENTIVEGNA., et al,

                       Defendants.
-------------------------------------------------------------X

**MEMORANDUM**
**OPINION AND ORDER**

19-CV-4754 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Plaintiff Solomon Boomer ("Plaintiff"), currently incarcerated at Green Haven Correctional Facility ("Green Haven") and proceeding *pro se* and *in forma pauperis*, commenced this action on March 14, 2019 against Doctor Bentivegna ("Bentivegna"), Nurse Practitioner Ashong ("Ashong"), and Nurse Practitioner Leonard ("Leonard," and collectively, "Defendants"). (Doc. 1, "Compl."). Plaintiff asserts, under 42 U.S.C. § 1983, that his Eighth Amendment rights were violated when Defendants were deliberately indifferent to his serious medical needs.

      Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on May 26, 2020. (Doc. 30; Doc. 31, "Defs. Br."). Plaintiff filed opposition to the motion to dismiss on July 2, 2020 (Doc. 36, "Pl. Opp'n"), and the motion was fully submitted with the filing of Defendants' reply brief on July 21, 2020 (Doc. 39).

      For the reasons set forth below, Defendants' Rule 12(b)(6) motion is GRANTED.

## BACKGROUND

      The facts, as recited below, are taken from Plaintiff's Complaint. Since arriving at Green Haven in 2015, Plaintiff complained to prison officials about back pain related to three prior back

1

surgeries. (Compl. at 4).[1] At some point, Plaintiff was provided physical therapy for his back pain. (*Id.*). On April 12, 2016, Plaintiff received an x-ray because he "could not stand up straight and walk." (*Id.*). Plaintiff claims that while the x-ray revealed that he had a bulging disc and a curved spine, no one informed him of the results of the x-ray and he did not learn that he had a bulging disc and curved spine until nine or ten months later. (*Id.*). On March 21, 2017, an MRI "verified the diagnosis." (*Id.*). Ashong was Plaintiff's provider at this time and did not refer him to a neurosurgeon or orthopedic surgeon. (*Id.*).

At some unspecified time, Plaintiff was transferred to Elmira Correctional Facility ("Elmira") and Attica Correctional Facility ("Attica") before returning to Green Haven on July 18, 2018. (*Id.* at 5). At Attica, Plaintiff was sent to a specialist who recommended that he see a neurosurgeon, but when he was transferred back to Green Haven, he was told he "had to start over again" by going back to physical therapy before he could see a specialist. (*Id.* (emphasis omitted)). Plaintiff went to a physical therapist who again informed Plaintiff that he needed to see a neurosurgeon. (*Id.*). Leonard, Plaintiff's new provider, referred Plaintiff to a neurosurgeon on November 28, 2018, and Plaintiff was examined by a neurosurgeon at Putnam County Hospital on January 15, 2019. (*Id.*). The neurosurgeon allegedly recommended that Plaintiff be given a wheelchair and pain medication, but the recommendation was apparently denied by Leonard who remarked to Plaintiff that because he can walk, a wheelchair was unnecessary. (*Id.* at 5-6). Nonetheless, Leonard acknowledged that Plaintiff's medical conditions met the requirements for reasonable accommodation pursuant to "Directive #2614." (*Id.* at 6). Plaintiff uses a cane to help him walk, but states that the cane is insufficient to address his difficulty walking. (*Id.*).

Plaintiff alleges that: (1) Leonard was deliberately indifferent to Plaintiff's serious medical

---

[1] Because the Complaint does not utilize consistent page numbering, citations to the Complaint correspond to pagination generated by ECF.

needs because he denied Plaintiff's request for a wheelchair and pain medication, (*id*.); (2) Ashong was deliberately indifferent because he did not refer Plaintiff to a neurosurgeon, (*id*.); and (3) Bentivegna was deliberately indifferent because he was aware that Plaintiff's requests for a wheelchair and medications were denied and "failed to remedy the wrong, and allowed it to continued [sic], and was deficient in managing [Leonard]," (*id*.).

Plaintiff maintains that he suffers from "serious back problems" and "intolerable pain when walking" and believes that the physical therapy he has received is inadequate to treat his medical condition. (*Id*. at 4).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion,[2] the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[2] Defendants appear to frame the Prison Litigation Reform Act ("PLRA") exhaustion issue, addressed *infra*, as a jurisdictional defect and move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). (*See* Doc. 30). However, the Second Circuit has held clearly that "exhaustion is not jurisdictional." *Richardson v. Goord*, 347 F.3d 431, 433 (2d Cir. 2003); *see also Arnold v. Goetz*, 245 F. Supp. 2d 527, 531 (S.D.N.Y. 2003) ("Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint when the court 'lacks jurisdiction over the subject matter.' However, the PLRA's exhaustion requirement is not jurisdictional in nature." (internal citations omitted)). Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied as there is no basis for such a motion on these facts.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing the complaint of an individual represented by counsel. *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, [] 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)).

**ANALYSIS**.

I. <u>Eighth Amendment Claims</u>

Plaintiff presses, under 42 U.S.C. § 1983, Eighth Amendment[3] claims against Ashong, Leonard, and Bentivegna related to their allegedly inadequate treatment of his back pain. "The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)). Not every lapse in medical care rises to the level of a constitutional wrong; rather, to prove an Eighth Amendment violation related to the receipt of allegedly inadequate medical care, a Plaintiff must satisfy two prongs. *Id*. The first prong is objective and requires that the alleged deprivation in medical care be "sufficiently serious." *Id*. (quoting *Farmer*, 511 U.S. at 834). A deprivation in medical care is sufficiently serious if (1) "the prisoner was actually deprived of adequate medical care" and (2) "the inadequacy in medical care is sufficiently serious." *Id*. at 279-80. The latter inquiry "contemplates a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). If a plaintiff alleges that he received no medical care for his medical condition, "courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). If, however, a plaintiff acknowledges that he received some medical care related to the underlying condition, but that the care he received was inadequate, "the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id*. (quoting *Smith*, 316 F.3d at 185); *see also Smith*, 316

---

[3] Plaintiff identifies himself as a prisoner (Pl. Opp'n at 1) and thus his claims are asserted pursuant to the Eighth Amendment as opposed to the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

5

F.3d at 186 ("[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition considered in the abstract, that is relevant for Eighth Amendment purposes.").

The second prong of the deliberate indifference test is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. *Salahuddin*, 467 F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). A defendant had a sufficiently culpable state of mind if he "acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Salahuddin*, 467 F. 3d at 280).

Defendants argue that Plaintiff's allegations fail to give rise to the plausible inference that he can satisfy either prong of the Eighth Amendment deliberate indifference test. (Defs. Br. at 5-7). The Court agrees.

As to the first prong, interpreting the *pro se* Complaint with the required liberality, the allegations simply do not plausibly suggest that Plaintiff can establish that he suffered any deprivation of medical care that was sufficiently serious. Plaintiff's allegations make clear that he was not denied treatment for his back pain altogether; rather, Plaintiff received treatment related to his back pain on multiple occasions over many years. (Compl. at 4-5 (Plaintiff received physical therapy on at least two occasions); *id*. at 4 (Plaintiff got an x-ray on April 12, 2016); *id*. (Plaintiff got an MRI on March 21, 2017); *id*. at 5 (Plaintiff was referred to a neurosurgeon on November 28, 2018 and was examined by a neurosurgeon on January 15, 2019); *id*. at 6 (Plaintiff uses a cane)). The gravamen of Plaintiff's allegations, then, is not that he was denied medical care, but that the medical care he received was inadequate and/or not what he thought appropriate to treat his medical needs. However, it "is well-established that mere disagreement over the proper

6

treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703 (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Fate v. Goord*, No. 11-CV-7493, 2012 WL 3104884, at *6 (S.D.N.Y. July 31, 2012) ("'[D]isagreements over medications, diagnostic techniques, forms of treatment or the need for specialists or the timing of their intervention' are insufficient under § 1983." (quoting *Estelle*, 429 U.S. at 106)).

The only allegation directed toward Ashong is that he failed to refer Plaintiff to a neurosurgeon. (Compl. at 6). However, the allegations establish clearly that Plaintiff saw a neurosurgeon at Putnam County Hospital on January 15, 2019. (*Id*. at 5). The delay in Plaintiff being referred to a neurosurgeon does not give rise to an Eighth Amendment claim. *Fate*, 2012 WL 3104884, at *6. As to Leonard, Plaintiff alleges that he disregarded the neurosurgeon's recommendations by failing to provide a wheelchair or pain medications. (*Id*. at 6). That Plaintiff disagrees with Leonard's decision regarding Plaintiff's need for a wheelchair and pain medication is simply insufficient to establish the objective prong of an Eighth Amendment claim. *See Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *7 (S.D.N.Y. Oct. 11, 2017), *adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018) ("To the extent [plaintiff] claims defendants should have provided him with a wheelchair this is best characterized as a disagreement as to the method of addressing his inability to walk, and thus not grounds for a section 1983 claim." (internal citations omitted)); *Kalamaras v. Mangano*, No. 16-CV-0459, 2016 WL 4132254, at *9 (E.D.N.Y. Aug. 2, 2016) (finding that while plaintiff claims he "required a wheelchair" he "acknowledge[d] that he was prescribed physical therapy and steroid treatment. Although Plaintiffs may disagree with the medical treatment provided, such disagreement does not give rise to a deliberate indifference

claim"); *Brown v. Wright*, No. 04-CV-0462, 2005 WL 3305015, at *5 (S.D.N.Y. Dec. 6, 2005) (finding inmate did not have a constitutional claim where the inmate "requested a wheelchair and different medication, but these requests were denied" because "mere disagreement over the proper course of treatment does not create a constitutional claim . . . so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation" (citing *Chance*, 143 F.3d at 703)).

Additionally, Plaintiff's allegations simply do not establish that his back pain is the type of "life-threatening" or fast-degenerating" condition upon which a deliberate indifference claim can be premised. *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *12 (S.D.N.Y. Sept. 27, 2013) ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment [or] ignored a 'life-threatening and fast-degenerating' condition . . . ." (quoting *Culp v. Koenigsmann*, No. 99-CV-9557, 2000 WL 995495, at *7-8 (S.D.N.Y. July 19, 2000))). Plaintiff's back pain was treated by officials at Green Haven repeatedly and Plaintiff currently uses a cane to help him walk. The fact that the treatment provided differs from what Plaintiff desired does not suggest plausibly that the deprivation in medical care was so serious as to implicate the protections of the Eighth Amendment.

The allegations also do not suggest plausibly that Plaintiff can satisfy the subjective prong of an Eighth Amendment claim. In medical-treatment cases a plaintiff must prove "that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 836-37). "[T]he risk of harm must be substantial and the official's actions more than merely negligent." *Id*. (citing *Farmer*, 511

8

U.S. at 835-37). To establish the subjective element, a Plaintiff must establish that "the defendants knew of the health dangers and yet refused to remedy the situation, constituting deliberate indifference." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Wilson*, 501 U.S. at 302-04). It is not enough to show that Defendants lacked due care; rather, Plaintiff must establish that the defendants' conduct "involved obduracy and wantonness in placing [the plaintiff's] health in danger." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Here, Plaintiff alleges that Ashong failed to refer Plaintiff to a neurosurgeon and that Leonard failed to provide Plaintiff a wheelchair and pain medications. These sparse allegations simply do not permit the plausible inference that either Defendant acted with the requisite culpable state of mind or took actions that involved "obduracy and wantonness." Rather, these medical providers merely exercised their medical judgment, and "[t]he exercise of medical judgment cannot be deliberate indifference." *Kemp v. Wright*, No. 01-CV-562, 2005 WL 893571, at *7 (E.D.N.Y. Apr. 19, 2005) (citing *Hernandez v. Keane*, 341 F.3d 137, 146-47 (2d Cir. 2003)); *see also, e.g.*, *Estelle*, 429 U.S. at 107 (holding that an exercise of medical judgment cannot constitute deliberate indifference).

As to Plaintiff's allegations against Bentivegna, Plaintiff claims only that Bentivegna was aware that Plaintiff had been denied a wheelchair and pain medication and that he did nothing to remedy the situation. (Compl. at 6). The Court has already found *supra* that Plaintiff's medical condition was not sufficiently serious, and in any event, this single allegation in no way establishes that Bentivegna possessed the requisite culpable state of mind. Accordingly, Plaintiff's Eighth Amendment claims against Ashong, Leonard, and Bentivegna are dismissed.

II. ADA Claims

The Complaint references "Directive #2614" (Compl. at 6), which is presumably a reference to Directive 2614 of the New York State Department of Corrections and Community Supervision's Policy entitled "Reasonable Accommodations for Inmates with Disabilities," *see Dimperio v. New York State Dep't of Corr. & Cmty. Supervision*, No. 13-CV-1010, 2015 WL 1383831, at *3 (N.D.N.Y. Mar. 25, 2015), *aff'd,* 653 F. App'x 52 (2d Cir. 2016). To the extent Plaintiff's reference to Directive 2614 was an attempt to state a claim under the Americans with Disabilities Act of 1990 ("ADA"), Plaintiff has failed to do so. To state an ADA claim, "a prisoner must show: '(1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity.'" *Singleton v. Perilli*, No. 03-CV-2271, 2004 WL 74238, at *4 (S.D.N.Y. Jan. 16, 2004) (quoting *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995)). Plaintiff has failed to state a *prima facie* ADA claim as there are no allegations in the Complaint establishing these elements. As such, claims asserted under the ADA are dismissed.[4]

III. PLRA Exhaustion

Defendants argue also that Plaintiff failed to exhaust his administrative remedies under the PLRA prior to commencing this action and thus the Complaint should be dismissed. (Defs. Br. at 8-9). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies under the PLRA is an affirmative defense, not a pleading requirement,

---

[4] Defendants also argue that dismissal is appropriate because Defendants are shielded by qualified immunity. (Defs. Br. at 7-8). The Court need not and does not reach this alternate ground for dismissal.

10

and "inmates are not required to specially plead or otherwise demonstrate exhaustion in their complaints." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Nonetheless, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id*. If, however, "nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss [can] be converted, pursuant to Rule 12[d], to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Stevens v. City of New York*, No. 12-CV-1918, 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012)). "[W]hen converting a [m]otion to [d]ismiss into a [m]otion for [s]ummary [j]udgment under Fed. R. Civ. P. 12(d), notice to the parties is mandated, particularly when a *pro se* litigant is involved." *Id*. (quoting *Samuels v. Fischer*, 168 F. Supp. 3d 625, 653 (S.D.N.Y. 2016) (alterations in original)).

It is not clear from the face of the Complaint that Plaintiff failed to exhaust his administrative remedies. While Plaintiff did annex to the Complaint certain documents related to his efforts to exhaust (Compl. at 9-44), and these documents can be considered properly on the present motion, the documents on which Defendants rely (Doc. 32) were not attached to the Complaint and therefore are not considered properly at this stage, *see Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.*, 881 F. Supp. 2d 556, 560 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 12 (2d Cir. 2013) ("In addition to the complaint, a court deciding a Rule 12(b)(6) motion may also consider documents the plaintiff attaches to the complaint." (citing *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000))). Thus, it is not clear from the face of the Complaint whether Plaintiff has exhausted

his remedies. Furthermore, the Court will not convert Defendants' motion to dismiss to one for summary judgment as no notice has been provided to the *pro se* Plaintiff. Therefore, the Court declines, at this juncture, to dismiss Plaintiff's claims for failure to exhaust remedies under the PLRA.[5]

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss is GRANTED without prejudice. Plaintiff may, should he be so advised, file an Amended Complaint within thirty days from the date of this Order to address the specific pleading deficiencies identified herein. Failure to file an Amended Complaint within thirty days will result in dismissal of the claims for relief against Defendants with prejudice and the termination of this action. Plaintiff is reminded that if he chooses to file an Amended Complaint, the Amended Complaint will completely replace—not supplement—the Complaint. Therefore, any facts or claims that Plaintiff wishes to maintain must be included in the Amended Complaint.

The Clerk of the Court is respectfully directed to mail a copy of this Memorandum Opinion and Order to Plaintiff and terminate the pending motion (Doc. 30).

**SO ORDERED.**

Dated: White Plains, NY
       March 26, 2021

_____
Philip M. Halpern
United States District Judge

---

[5] Defendants argue also that Plaintiff's claims against Leonard should be dismissed because Leonard was never served. The Court finds that Leonard has waived any defense related to insufficient service of process. While Federal Rule of Civil Procedure 12(b)(5) permits a party to raise the defense of insufficient service of process via a motion to dismiss, such a defense is waived if it is omitted from the motion to dismiss. Fed. R. Civ. P. 12(h)(1)(B)(i). Here, Defendants' Notice of Motion indicated that Defendants were moving to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), but not Rule 12(b)(5). (*See* Doc. 30). Thus, Leonard has waived his right to raise the defense of insufficient service of process. Accordingly, the Court does not dismiss Plaintiff's claims against Leonard for insufficient service of process.